UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-cv-61935-Middlebrooks/McCabe

R.R.,

      Plaintiff,

v.

G6 HOSPITALITY PROPERTY LLC,
a Delaware limited liability company,

      Defendant.

_____/

## REPORT & RECOMMENDATION

THIS CAUSE comes before the Court on Defendant's motion to dismiss, which was referred to the undersigned by United States District Judge Donald M. Middlebrooks.  (DE 65, DE 73).  For the reasons set forth below, the undersigned **RECOMMENDS** that the motion be **DENIED**.

## I.     BACKGROUND

Plaintiff brings this case pursuant to the Trafficking Victims Protection Reauthorization Act ("TVPRA").

### A.    Initial Complaint

On March 25, 2026, the District Judge dismissed the initial complaint in this case and imposed Rule 11 sanctions against the lawyers who filed it.  *See R.R. v. Motel 6 Operating L.P.*, No. 25-61924-CV, 2026 WL 865685, at *1-8 (S.D. Fla. Mar. 25, 2026).  As noted by the District Judge, the initial complaint appeared to be a carbon copy duplicate of eight other complaints filed

by Plaintiff, a sex trafficking victim, against other hotel operators. *Id.* at *1. The nine complaints had identical phrasing, identical paragraph structure, and even identical typographical errors. *Id.*

Most significantly, the nine complaints had identical facts. As the most egregious example, each complaint recounted an identical story whereby hotel housekeeping staff allegedly observed Plaintiff fleeing from her hotel room "bleeding and with torn and missing clothing" after sex trafficking customers assaulted her. *Id.* at *2. In all nine complaints, the hotel housekeeping staff ignored Plaintiff's pleas for help after observing this identical incident. *Id.*

The District Judge found it implausible that this fact-specific incident happened identically at all nine hotels. *Id.* Based on this and numerous other examples, the District Judge concluded that "the Complaints were drafted from a common template rather than tailored to each Defendant or location." *Id.* at *2. As such, the District Judge dismissed the initial complaint for failure to allege plausible facts to support a claim for relief. *Id.* at *8. The District Judge allowed leave to file an Amended Complaint but cautioned Plaintiff's counsel to study the pleading standards in federal court before doing so. *Id.*

**B.    Amended Complaint**

On April 24, 2026, Plaintiff filed an Amended Complaint deleting the housekeeping incident and reducing the total allegations from 46 pages to 26 pages. Compare DE 1-1 at 8-53 (46 pages) with DE 54 (26 pages). At the hearing on this motion, Plaintiff's counsel reported that she had consulted with Plaintiff and included only those allegations that Plaintiff could specifically connect to the hotel in question.

In sum, the Amended Complaint alleges that two sex traffickers trafficked Plaintiff from April of 2009, when Plaintiff was 15 years old, through September of 2015. (DE 54 ¶¶ 2-3).

Among many other hotels, the traffickers frequently stayed at Defendant's hotel, located in West Palm Beach, and used it as a base of operations for sex trafficking.  (DE 54 ¶¶ 4-5, 27-28).  The traffickers stayed at Defendant's hotel dozens of times, usually for one to three weeks at a time, before moving on to the next hotel.  (DE 54 ¶¶ 5, 28).  Plaintiff also recalled a 6-month stay at Defendant's hotel in 2011.  (DE 54 ¶¶ 5, 28).

Plaintiff alleges that Defendant knew or should have known about the sex trafficking activities and that Defendant actively participated in these activities.   (DE 54 ¶¶ 37-39).  Specifically, Plaintiff alleges that Defendant created a safe space for sex trafficking and provided personalized support to traffickers by, among other things, acting as lookouts, warning when law enforcement was approaching or when guests were complaining, moving Plaintiff to different hotel rooms to avoid detection, and refusing to report obvious sex trafficking to law enforcement.  (DE 54 ¶¶ 38-39).  Plaintiff further alleges that Defendant benefited financially and participated in the profits of the sex trafficking venture.  (DE 54 ¶¶ 28, 40, 48, 67, 79-94).

Based on these allegations, Plaintiff brings the following claims:

| Count | Claim |
|-------|-------|
| 1 | Perpetrator Liability under the TVPRA, 18 U.S.C. §§ 1591(a)(1) & (a)(2) |
| 2 | Beneficiary Liability under the TVPRA, 18 U.S.C. § 1595(a) |

(DE 54 ¶¶ 50-73, 74-105).

## II.   STANDARD

By way of this motion, Defendant urges the Court to dismiss both counts of the Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P.

12(b)(6).  In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept a plaintiff's allegations as true and construe them in the light most favorable to the plaintiff.  *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).  Although Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," a mere "formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

## III.    DISCUSSION

The TVPRA creates a private cause of action for victims of sex trafficking crimes as follows:

> (a) An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a).  The statute authorizes claims against two categories of defendants:  (1) perpetrators of sex trafficking, and (2) those who knowingly benefit, or attempt or conspire to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in sex trafficking.  Courts refer to these claims, respectively, as "perpetrator" claims and "beneficiary" claims.  *E.g.*, *A.G. v. Northbrook Indus., Inc.*, 171 F.4th 1257, 1268 (11th Cir. 2026).

Here, the Amended Complaint alleges both a perpetrator claim (Count 1) and a beneficiary claim (Count 2).  (DE 54 ¶¶ 50-73, 74-105).  Defendant raises two sets of arguments in support of dismissal, each of which the Court will address in turn.

### A.      Implausibility

First, Defendant urges dismissal for failure to allege plausible factual allegations entitling Plaintiff to relief.  (DE 65 at 11).  Defendant raises three subsets of this argument, each of which the Court will address in turn.

### 1.      Continued Similarity to Other Complaints

Defendant first argues that the Amended Complaint should be dismissed because it continues to duplicate the allegations of multiple other cases.  (DE 65 at 11-12).  In support, Defendant has attached a ten-page chart showing overlapping allegations with five other cases filed by Plaintiff in this district.  (DE 65-1).[1]  Defendant contends that these overlapping allegations render the Amended Complaint implausible.  In other words, the same events could not plausibly have happened at six different hotels.

The Court disagrees.  As noted, the Amended Complaint removes the implausible allegation concerning the identical housekeeping incident.  As to the remaining allegations, the Amended Complaint explains that Plaintiff was trafficked at numerous hotels on a regular basis, staying for short periods of time at each hotel before moving to the next hotel.  (DE 54 ¶¶ 5, 28).

---

[1] The other cases are (1) *R.R. v. Motel 6 Operating L.P. et al*, No. 25-cv-61924 (S.D. Fla); (2) *R.R. v. CPLG FL Properties L.L.C.*, No. 25-cv-62015 (S.D. Fla.); (3) *R.R. v. CPLG West Palm Beach L.L.C.*, No. 25-cv-81380 (S.D. Fla.); (4) *R.R. v. BRE Florida Wellesley L.L.C. et al*, No. 25-cv-62016 (S.D. Fla.); and (5) *R.R. v. BRE Florida Wellesley L.L.C. et al*, No. 25-cv-81246 (S.D. Fla.).

The Court finds it entirely plausible that a similar *modus operandi* could repeat itself at different hotels that encourage and benefit from sex trafficking.

As representative examples, Defendant takes issue with the following allegations of the Amended Complaint, arguing that these events could not plausibly have happened at six different hotels:

- Plaintiff was "raped many hundreds of times" at the hotel by people who paid her traffickers for "dates."  (DE 54 ¶ 23).

- Traffickers used the hotel's Wi-Fi networks to post advertisements for Plaintiff to perform sex acts.  (DE 54 ¶ 26).

- Traffickers used the hotel parking lot as a staging area and makeshift office for their sex trafficking business.  (DE 54 ¶ 27).

- The hotel eschewed its policies requiring the reporting of sex trafficking in favor of a policy of assisting traffickers and sharing in the profits that sex trafficking brought to the hotel.  (DE 54 ¶¶ 35, 37-40).

- Traffickers frequently yelled at Plaintiff, physically shoved her, and jerked her around in common areas of the hotel in front of hotel staff.  (DE 54 ¶ 38.b).

- Hotel staff interacted with, observed, and permitted Plaintiff to solicit men for sex throughout the hotel's premises even near the front desk while they were present.  (DE 54 ¶ 38.h).

- Hotel staff observed and permitted Plaintiff to have sexual interactions with men in their vehicles in the hotel parking lot.  (DE 54 ¶ 38.i).

- A constant stream of "dates" without luggage – 10 or more per day – came and went from Plaintiff's room usually for 20-minute stays, often passing through the view of hotel staff.  (DE 54 ¶ 38.p).

- Hotel staff provided traffickers with personalized support including acting as informants and lookouts, warning them when law enforcement was approaching, so they could stop the trafficking until it was safe to resume operations.  (DE 54 ¶ 39.a).

- Hotel staff occasionally provided Plaintiff with additional keys or unlocked her door without having to show identification.  (DE 54 ¶ 39.f).

- The hotel provided traffickers with discounts and, on occasion, free rooms.  (DE 54 ¶ 39.i).

- Traffickers openly tipped hotel staff, including management, security, and behind-the-desk positions for personalized support, preferential treatment.  (DE 54 ¶ 39.n).

- Plaintiff met other sex trafficking victims at the hotel, some who appeared to be extremely young during the time that she was trafficked there.  (DE 54 ¶ 41).

The Court disagrees with the premise that such events could not plausibly recur at multiple hotels.  In the Court's view, the fact that Plaintiff alleged similar allegations in other lawsuits does not make them less plausible here.  Moreover, Plaintiff added location-specific allegations to her Amended Complaint, including the fact that she specifically recalled this hotel having many black Caribbean males and females and an older white female manager with a sunken face and long stringy hair, who consistently provided support to her traffickers.  (DE 54 ¶ 49).  She also continues

7

to allege numerous location-specific Google guest reviews for the hotel, which suggest sex trafficking, including the following:

- "Four overdose deaths of drugs while staying there. *Ladies of the night in their preferred place to do business*." (DE 54 ¶ 42.a) (emphasis added).

- "One of the people who walked into the lobby *liked [sic] like a prostitute.*" (DE 54 ¶ 42.b) (emphasis added).

- "Sketchy looking people who looked like they were under the influence of some sort of drug or drugs, drug dealers, *and prostitutes were not uncommon to see...*" (DE 54 ¶ 42.d) (emphasis added).

- "The room had two beds, but only ONE pillow on each, only a sheet with NO COVERS. *Might the room be used for prostitution?*" (DE 54 ¶ 42.e) (emphasis added).

- "There were drug dealers, *prostitution*, drug heads, and my room smelled as if I were smoking." (DE 54 ¶ 42.f) (emphasis added).

- "[A] nurse at the hospital told me *the hotel was known for prostitution...*" (DE 54 ¶ 42.g) (emphasis added).

- "Came back that night after a long day and there were three cops arresting *what seem to be a prostitution ring*, didn't make me feel safe." (DE 54 ¶ 42.h) (emphasis added).

- "[T]his place is always busy with drugs *working women* and want to be thugs." (DE 54 ¶ 42.i) (emphasis added).

In the Court's view, these location-specific allegations lend plausibility to Plaintiff's remaining allegations. As such, the Amended Complaint does not suffer from the same defects that led to the District Judge's earlier dismissal. The Court rejects this argument for dismissal.

### 2.    Perpetrator Claim

Defendant next argues that Count 1 should be dismissed because it fails to include sufficient allegations to support a plausible perpetrator claim. (DE 65 at 8-9, 13-14). As stated, the TVPRA provides that a victim of sex trafficking may bring a civil action against a "perpetrator." 18 U.S.C. § 1595(a). A "perpetrator" means someone who has violated the underlying criminal sex trafficking statute, 18 U.S.C. § 1591(a). *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 724 (11th Cir. 2021).

The underlying statute, in turn, provides for two types of criminal violations, set forth in subsections (a)(1) and (a)(2) as follows:

(a) Whoever knowingly—

(1)    in or affecting interstate or foreign commerce … recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

(2)    benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a).

9

To state a plausible perpetrator claim under the TVPRA, therefore, a plaintiff must allege facts that show the defendant violated the above criminal statute. *Doe v. Hotels*, No. 6:23-CV-1012-JSS-LHP, 2024 WL 2955728, at \*5 (M.D. Fla. June 12, 2024). As applied here, Plaintiff alleges that Defendant violated both subsections of the statute. (DE 54 ¶¶ 61-72).

As to subsection (a)(1), the Eleventh Circuit has adopted a standard jury instruction to summarize the elements of this offense, requiring proof of three elements as follows:

(1) the Defendant knowingly [recruited] [enticed] [harbored] [transported] [provided] [obtained] or [maintained] by any means [individual named in the indictment];

(2) that the Defendant did so knowing or in reckless disregard of the fact that [means of force, threats of force, fraud, coercion, or any combination of such means would be used to cause the person to engage in a commercial sex act] [the person had not attained the age of 18 years and would be caused to engage in a commercial sex act]; and

(3) that the Defendant's acts were in or affected [interstate] [foreign] commerce.

*See* Eleventh Cir. Pattern Criminal Jury Instr. O63.

As to subsection (a)(2), the Eleventh Circuit has not adopted a standard instruction. Borrowing from other standard instructions, however, the Court finds that subsection (a)(2) requires proof of four elements as follows:

(1) the Defendant knowingly benefitted financially or by receiving anything of value;

(2) from participation in a venture that [recruited] [enticed] [harbored] [transported] [provided] [obtained] [advertised] [maintained] [patronized] [or] [solicited] a person to engage in a commercial sex act;

(3) the Defendant knew or was in reckless disregard of the fact that [means of force, threats of force, fraud, coercion or any combination of such means would be used to cause the person to engage in a commercial sex act] or [that the person had not attained the age of 18 years and would be caused to engage in a commercial sex act]; and

(4)   the Defendant's acts were in or affecting interstate or foreign commerce.

*See* Ninth Cir. Pattern Criminal Jury Instr. 8.134B.

The Court has reviewed the allegations of Count 1 and compared them to the elements necessary to show a violation of each subsection as set forth above.  Based on this review, and construing all reasonable inferences in Plaintiff's favor, the Court finds that Count 1 states a plausible claim for relief.

Defendant makes two arguments in support of dismissal, each of which the Court will address in turn.  First, as to subsection (a)(1), Defendant argues that Plaintiff fails to allege facts to show that Defendant "harbored" her within the meaning of the statute.  The TVPRA does not define the term "harbor."  In its prior Order, however, the District Judge drew an analogy to other criminal statutes that use this term.  *R.R.*, 2026 WL 865685, at *5.  The District Judge noted that "[c]ourts interpreting 'harboring' in analogous criminal statutes have held that merely providing lodging—even knowingly—is insufficient absent an intent to further illegal conduct."  *Id.* (citing *United States v. Tydingco*, 909 F.3d 297, 302–04 (9th Cir. 2018); *Reyes v. Waples Mobile Home Park Ltd. P'ship*, 91 F.4th 270, 278–79 (4th Cir. 2024)).

Applying that standard here, the Court finds that the Amended Complaint contains sufficient allegations to show that Defendant "harbored" Plaintiff, meaning that Defendant provided shelter to Plaintiff and did so with the intent to further illegal conduct.  Specifically, the Amended Complaint alleges that Defendant provided shelter to Plaintiff by renting rooms to her traffickers.  (DE 54 ¶¶ 25, 48, 57, 61, 63, 65, 84).  The Amended Complaint also alleges facts that show Defendant had actual knowledge or acted in reckless disregard of the fact that Plaintiff was a victim of sex trafficking.  (DE 54 ¶¶ 37-41, 71).

11

The Amended Complaint further alleges facts that show Defendant assisted and intended to facilitate the sex traffickers' operations by, among other things, providing personalized support to traffickers, including by acting as lookouts, warning when law enforcement was approaching or guests were complaining, moving Plaintiff to different rooms to avoid detection, and refusing to report obvious sex trafficking to law enforcement.  (DE 54 ¶¶ 37-39).  The Court finds these allegations sufficient.  *See Doe*, 2024 WL 2955728, at *6 (finding sufficient allegations of "harboring," where complaint alleged facts showing that hotel "entered into a tacit agreement with Plaintiff's traffickers to provide them with a room and shelter whereby Plaintiff could be trafficked for profit").

Next, as to subsection (a)(2), Defendant argues that Plaintiff fails to allege facts to show that Defendant "participated in a venture" within the meaning of the statute.  For purposes of § 1591(a)(2), the term "participation in a venture" means "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)."  18 U.S.C. § 1591(e)(4).  The term "venture" means "any group of two or more individuals associated in fact, whether or not a legal entity."  18 U.S.C. § 1591(e)(6).

The Court finds that the Amended Complaint contains sufficient allegations to satisfy these statutory definitions.  Specifically, as set forth above, the Amended Complaint alleges facts that show Defendant "harbored" Plaintiff within the meaning of § 1591(a)(1).  In the Court's view, the same allegations that support this conclusion likewise show that Defendant "knowingly assist[ed], support[ed], or facilitat[ed]" a violation of § 1591(a)(1).  As such, the Amended Complaint satisfies the statutory definition of "participated in a venture" as set forth in § 1591(e)(4).

12

Likewise, the Amended Complaint alleges facts that satisfy the statutory definition of "venture" as set forth in § 1591(e)(6).  Specifically, the Amended Complaint alleges that two or more individuals or legal entities, i.e., Plaintiff's sex traffickers and Defendant, comprised the venture.  (DE 54 ¶¶ 59, 61, 66, 69, 71).  The Court finds these allegations sufficient to satisfy the statutory definition.  For all of the above reasons, the Court rejects Defendant's arguments for dismissal of the perpetrator claim.

### 3.    Beneficiary Claim

Defendant next argues that Count 2 should be dismissed for failure to include sufficient allegations to support a plausible beneficiary claim.  (DE 65 at 8-9).  As stated, § 1595(a) allows a beneficiary claim against "whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter."

A beneficiary claim under § 1595(a) differs from a perpetrator claim under § 1591(a)(2), which (confusingly) also includes a requirement that the defendant "benefit" from sex trafficking.  In *Red Roof*, 21 F.4th at 723-25, the Eleventh Circuit distinguished between the two types of claims in the context of articulating the requirements of a § 1595(a) claim.  The Eleventh Circuit began by finding, as a matter of statutory construction, that § 1591's statutory definitions of "participation in a venture" and "venture" cannot be imported into § 1595(a). *Id.* at 724.  Rather than import these statutory definitions, the Eleventh Circuit opted to use the plain and ordinary meaning of the term "venture," which the court construed to mean an "undertaking or enterprise involving risk and potential profit." *Id.* at 724-25.  For purposes of § 1595(a), therefore, the phrase "participation

13

in a venture" means that a plaintiff must prove that the defendant "took part in a common undertaking or enterprise involving risk and potential profit." *Id.* at 725.

The *Red Roof* court also recognized that, in contrast to a perpetrator claim under § 1591(a)(2), a beneficiary claim under § 1595(a) allows for liability based upon a "should have known" standard. *Id.* at 725. The Eleventh Circuit interpreted this language to allow for liability based on constructive knowledge of a TVPRA violation, meaning knowledge that "one using reasonable care or diligence should have." *Id.* at 725 (quoting Constructive Knowledge, Black's Law Dictionary (11th ed. 2019)); *see also R.R.*, 2026 WL 865685, at *4 (noting that a beneficiary claim under § 1595(a) has a different mental state requirement than a perpetrator claim under § 1591(a)).

The Eleventh Circuit thus formulated the elements of a § 1595(a) beneficiary claim as requiring proof that a defendant:

(1) knowingly benefited;

(2) from participating in a common venture involving risk and potential profit;

(3) that the venture violated the TVPRA (§ 1591(a)(1) or § 1591(a)(2)); and

(4) that defendant had constructive or actual knowledge that the venture violated the TVPRA.

*Id.* at 725; *see also A.G.*, 171 F.4th at 1270 (clarifying that element (4) does not require actual or constructive knowledge of a TVPRA violation *as to the plaintiff in question*).

The Court has reviewed the allegations of Count 2 and compared them to the above elements. Based on this review, and construing all reasonable inferences in Plaintiff's favor, the Court finds that Count 2 states a plausible claim for relief.

14

Defendant makes only one argument in support of dismissal, namely, that the Amended Complaint fails to allege facts that show "participation in a venture" as defined by *Red Roof* and its progeny.  (DE 65 at 13-14).  As Defendant correctly points out, in *Red Roof*, the Eleventh Circuit found that a hotel operator does not participate in a sex trafficking venture merely by observing and ignoring red flags of sex trafficking.  21 F.4th at 726-27; *see also K.H. v. Riti, Inc.*, No. 23-11682, 2024 WL 505063, at *3 (11th Cir. Feb. 9, 2024) (noting that "observing something is not the same as participating in it").  Likewise, the Eleventh Circuit has recognized that a hotel operator does not share in the risk and potential profit of a sex trafficking venture merely by making money from the rental of hotel rooms via an ordinary buyer-seller transaction.  *A.G.*, 171 F.4th at 1269.  Instead, "something more" is required.  *Id.* (conceding that "something more" does not provide "very illuminating guidance" for district courts to follow).

Applying these standards here, the Court finds that the Amended Complaint alleges sufficient facts to show "something more."  Specifically, the Amended Complaint alleges, not merely that Defendant observed and ignored red flags, but that Defendant actively participated in the sex trafficking venture by, among other things, offering personalized services to sex traffickers, including by acting as lookouts, warning when law enforcement was approaching or guests were complaining, moving Plaintiff to different rooms to avoid detection, and refusing to report obvious sex trafficking to law enforcement.  (DE 54 ¶¶ 37-39); *see A.G.*, 171 F.4th at 1269 (noting that "something more" may include offering "personalized support" to sex traffickers).

Plaintiff also alleges that Defendant had business dealings with Plaintiff's traffickers over a multi-year period and that Defendant adopted and followed its trafficking-friendly policies in order to promote continued patronage by the traffickers.  (DE 54 ¶¶ 5, 28, 35, 39-40, 64, 91-94).

15

*See Red Roof*, 21 F.4th at 725-26 (acknowledging, in dicta, that a plaintiff could state a plausible claim where traffickers had prior commercial dealings with hotel operator and where operator wished to reinstate those dealings and become associated with traffickers in an effort to serve their business objectives). The Court finds these allegations sufficient to survive a motion to dismiss. For all of the above reasons, the Court rejects Defendant's arguments for dismissal of the beneficiary claim.

### B.    Vicarious Liability for Acts of Employees

Finally, Defendant argues that both counts of the Amended Complaint should be dismissed for failure to allege facts that show Defendant can be held vicariously liable for the acts of employees who may have violated the TVPRA. (DE 65 at 14-16). The Court agrees that the TVPRA allows for corporate entities to be held vicariously liable for the acts of employees. *See Treminio v. Crowley Mar. Corp.*, 649 F. Supp. 3d 1223, 1232 (M.D. Fla. 2023) (collecting cases and declining to dismiss TVPRA claim against corporation for violative acts of its employees). For purposes of this motion, the Court assumes that Florida law governs the vicarious liability analysis. *See R.R.*, 2026 WL 865685, at *6 (applying Florida law of vicarious liability).

Under Florida law, a plaintiff must satisfy three elements to hold an employer liable for the conduct of its employee: "(1) the conduct is of the kind the employee is hired to perform, (2) the conduct occurs substantially within the time and space limits authorized or required by the work to be performed, and (3) the conduct is activated at least in part by a purpose to serve the master." *Sussman v. Fla. E. Coast Props., Inc.*, 557 So. 2d 74, 75 (Fla. 3d DCA 1990). As a general rule, issues of vicarious liability pose fact-intensive questions that can rarely be resolved on a motion to dismiss. *See Witover v. Celebrity Cruises, Inc.*, 161 F. Supp. 3d 1139, 1150 (S.D. Fla. 2016)

16

(noting that "the nature and scope of an agency relationship is intensively factual and will almost always require discovery to fully resolve the issues"); *DK v. Sch. Bd. of Manatee Cnty.*, Fla., No. 8:14-CV-2329-T-33TBM, 2014 WL 5473578, at *2 (M.D. Fla. Oct. 28, 2014) ("[B]ecause vicarious liability claims are a fact intensive inquiry, this issue is more appropriately addressed at the summary judgment stage.").

Applying these standards here, the Court finds that the Amended Complaint makes sufficient allegations of vicarious liability to survive a motion to dismiss. As to element (1), the Amended Complaint alleges that Defendant adopted and followed a policy of assisting sex traffickers and creating a safe space for sex traffickers in order to increase hotel profits. (DE 54 ¶¶ 35, 38). Based on the totality of allegations in the Amended Complaint, the Court finds this allegation to be plausible, and the Court accepts it as true. Given a company policy in favor of sex trafficking, the Court finds that Defendant's employees acted within the course and scope of their employment by engaging in conduct that violated the TVPRA.

As to element (2), the Amended Complaint alleges that Defendant's employees engaged in the relevant conduct at Defendant's hotel, during regular hours of employment, while on duty, and while performing job duties connected to hotel operations. (DE 54 ¶¶ 38-40, 45, 48). The alleged conduct also involved hotel-specific functions, including renting rooms, interacting with guests and traffickers, monitoring common areas, responding to complaints, providing keys, relocating Plaintiff to different rooms, and deciding whether to report suspected trafficking to law enforcement. (DE 54 ¶¶ 38-40, 48). The Court finds these allegations sufficient.

As to element (3), the Amended Complaint alleges Defendant's employees engaged in the violative conduct in order to generate profits for Defendant's hotel. (DE 54 ¶¶ 25, 35, 40, 44-48,

17

84).  The Court finds these allegations sufficient to show the conduct was "activated at least in part by a purpose to serve the master" within the meaning of Florida law.  In sum, the Court finds that the Amended Complaint contains sufficient allegations to support all three elements of vicarious liability under Florida law.

The Court has considered, but finds unpersuasive, Defendant's argument that the Amended Complaint must be dismissed because it alleges that Defendant had a policy forbidding employees from accepting tips from guests.  (DE 65 at 14-15).  Based on this allegation, Defendant argues that Plaintiff has conceded that employees acted outside the course and scope of their employment by accepting tips from sex traffickers, which Plaintiff alleged as part of the conduct constituting the TVPRA venture.  (DE 65 at 14-15).

The Court rejects this argument for two reasons.  First, accepting tips from sex traffickers constitutes a small part of the overall scheme of TVPRA violative conduct alleged in the Amended Complaint.  Second, and at any rate, the Amended Complaint alleges that, despite the official policy, Defendant followed a de facto policy of allowing employees to accept tips from sex traffickers in exchange for personalized services in order to create a safe space for sex traffickers and thereby generate higher profits for Defendant.  (DE 54 ¶¶ 47-48).

At summary judgment or trial, Defendant may well prove it had no such de facto policy, nor did it have any policies of encouraging or promoting sex trafficking at its hotel.  Likewise, Defendant may well prove that its employees never assisted sex traffickers or that, if they did so, such actions fell outside the course and scope of their employment.  Defendant remains free to raise these fact-based arguments at later stages of the case.  In the meantime, the Court accepts the well pleaded allegations of the Amended Complaint as true and rejects this argument for dismissal.

*See Doe*, 2024 WL 2955728, at *10 (denying motion to dismiss vicarious TVPRA claim); *Treminio*, 649 F.Supp.3d at 1232 (same).

## IV.    <u>RECOMMENDATION & NOTICE OF RIGHT TO OBJECT</u>

For the reasons stated above, the undersigned respectfully **RECOMMENDS** that the pending motion (DE 65) be **DENIED**.

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Donald M. Middlebrooks.  Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 17th day of June 2026.

RYON M. MCCABE
U.S. MAGISTRATE JUDGE